UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| James A. Wickert,<br>　　　　　Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc.;<br>Equifax Information Services, LLC;<br>TransUnion, LLC; and DOES 1 through<br>100 inclusive,<br>　　　　　Defendants. | §<br>§<br>§　CASE NO. 5:23-cv-1007<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

COMES NOW Plaintiff **JAMES A. WICKERT** ("Plaintiff"), an individual, based on information and belief, to allege as follows:

## INTRODUCTION

1. This case arises under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §, 1681e(b), 1681i(a)(2)(A), 1681i(a)(4), and 1681i(a)(5)(A). Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting.

2. Defendant Experian Information Solutions, Inc. ("Experian") is inaccurately reporting the Hyundai Motor Finance ("Hyundai") account on Plaintiff's credit report which includes derogatory notations.

3. Defendant Equifax Information Services, LLC ("Equifax") is inaccurately reporting the Hyundai account on Plaintiff's credit report which includes derogatory notations.

4. Defendant TransUnion, LLC ("TransUnion") is inaccurately reporting the Hyundai account on Plaintiff's credit report which includes derogatory notations.

5. The Hyundai account is detrimental to Plaintiff's creditworthiness, Credit Score, and his ability to obtain new credit. The Hyundai account is inaccurately reporting due to his wife's pending chapter 13 bankruptcy.

6. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking

system and unfair credit reporting methods undermine the public confidence that is essential to the continued functioning of the banking system.

7. Creditors intentionally and routinely ignore both industry standards and FCRA requirements for accurately reporting debt information. Creditors know that deviating from recognized credit reporting standards and FCRA requirements will make it difficult for consumers to raise their credit scores and improve their creditworthiness.

8. This was not the intent of Congress when it enacted the Fair Credit Reporting Act.

## JURISDICTION & VENUE

9. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

10. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1367, and 15 U.S.C. § 1681.

11. This venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

12. Plaintiff alleges that, for purposes of establishing residency under 28 U.S.C. § 1391(b)(1), each of the named Defendants conducts sufficient business within the forum state and this Court has personal jurisdiction over each Defendant under 28 U.S.C. §§ 1391(c)(2) and 1391(d).

## GENERAL ALLEGATIONS

13. Plaintiff alleges that the Hyundai account was a joint account with his wife, Heather Wickert ("joint account holder") and that the account is in her Chapter 13 bankruptcy that was filed on December 17, 2021. The Hyundai debt is being paid through the bankruptcy plan and is subject to the bankruptcy stay.

14. Plaintiff alleges the Hyundai account is subject to a Chapter 13 bankruptcy.

15. Plaintiff alleges that due to the Hyundai account being subject to his wife's bankruptcy, the Hyundai tradeline should have been entirely removed from his credit reports, or in the alternative, the reporting should have ceased as of December 17, 2021, and should note the fact it is subject to a bankruptcy.

16. Plaintiff alleges the Hyundai tradeline contains derogatory reporting which is lowering his Credit Score and his ability to obtain new credit.

17. Plaintiff alleges that each and every Defendant is familiar with FCRA requirements and subscribes thereto.

18. Plaintiff alleges that each and every Defendant understands that deviation from the FCRA requirements or credit reporting industry standards can, and often does, result in the denial of credit, higher interest rates, and prompts a negative inference that would not be drawn if the data were reported in accordance with the recognized standards.

19. Plaintiff alleges that all of Defendants' actions alleged herein were committed knowingly, intentionally, and in reckless disregard of the unambiguous meaning of the FCRA, regulatory guidelines on accurate reporting, and credit reporting industry standards to purposefully undermine Plaintiff's ability to repair his Credit Score.

20. In the alternative, Plaintiff alleges that each and every Defendants' actions were the result of negligent policies, procedures, and an objectively unreasonable interpretation of the FCRA, all which inevitably led to inaccurate, misleading, or incomplete credit reporting.

## FACTUAL BACKGROUND

21. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.   FICO, Inc.**

22. FICO is a leading analytics software company with its principal headquarters in San Jose, California. FICO has over 130 patents related to their analytics and decision management technology and regularly uses mathematical algorithms to predict consumer behavior, including credit risk.

23. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent (90%) of lending decisions. [1]

24. A FICO Score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

25. Base FICO Scores range from 300 to 850, while industry specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

---

[1] While there are other credit scoring models, it is well established that FICO Score is by far the most widely used by lenders, employers, insurance companies, and lessors. *See* https://www.myfico.com (a website created and operated by Fair Isaac Corporation ("FICO"), "the company that invented the FICO credit score").

26. Different lenders use different versions of FICO Scores when evaluating a consumer's creditworthiness.

27. There are twenty-eight (28) FICO Scores that are commonly used by lenders.

28. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies ("CRAs").

29. The three largest CRAs are Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and TransUnion, LLC ("TransUnion").

30. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models, or algorithms, are based on the premise that the information provided by the CRAs is accurate and complies with both the FCRA requirements and credit reporting industry standards.

31. There are five (5) key factors that a FICO Score considers: (1) payment history; (2) amount of debt; (3) length of credit history; (4) new credit; and (5) credit mix.

32. Each of the five (5) factors is weighted differently by FICO.

33. In other words, thirty-five percent (35%) of a consumer's FICO Score relates to payment history, thirty percent (30%) relates to the amount of debt, fifteen percent (15%) relates to the length of credit history, ten percent (10%) relates to new credit, and the final ten percent (10%) relates to a consumer's credit mix, which is the different types of debts reported.

34. Payment history refers to whether a consumer has paid their bills in the past, on time, late, or missed payments. The more severe, recent, or frequent the late payment information, the greater the impact on a FICO Score. Public record items, such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

35. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

36. Once a delinquent account has been remedied, the longer the account stays current the more a consumer's FICO Score should increase.

37. FICO Scores are entirely dependent upon information provided by data furnishers ("DFs"), such as banks and other financial institutions, to CRAs.

38. A FICO Score is a summary of your credit report. In simple terms, the FICO Score is calculated by taking the five (5) factors (payment history, amount of debt, length of credit history, new credit, and credit mix) for each account in a credit report and calculating a three digit number for lenders to review. "When you apply for credit, lenders need a fast and consistent way to decide whether or not to loan you money." *See* https://www.myfico.com/credit-education/what-is-a-fico-score. If a lender or employer did look past the FICO Score into a consumer's reports, chances are they either do not understand the tradeline meanings themselves, or, if they do and realize something appears incorrect, they are incapable of recalculating the complex mathematical algorithms in a FICO Score to take the found error into consideration. Therefore, most lenders and employers do not review individual accounts, just a consumer's FICO Score (or average of FICO Scores) in order to make "quicker decisions". *See id*.

39. Some lenders also use internal scoring models. In these instances, the lenders attempt to produce their own "FICO Score" based upon their internal credit scorecard models. These models are, similar to FICO, based upon algorithms, business rules, codes, etc. and take information reported in the credit reports and assign weights to them in order to assess risk and make determinations as to consumer's creditworthiness. FICO Scores and the scores based off internal models being collectively referred to as "Credit Score".

**B.     e-OSCAR**

40. e-OSCAR is the web-based system developed by Experian, Equifax, TransUnion, and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

41. When a consumer sends a dispute letter to a CRA, the CRA then sends an automated credit dispute verification ("ACDV") via e-OSCAR to the appropriate DF.

42. The ACDV contains codes next to certain data fields associated with a credit file.

43. When a data furnisher reports on a consumer's account as part of its regular reporting, it sends a regular monthly transmission to each CRA.

44. When a data furnisher reports on a consumer's account outside of its regular monthly transmission, it sends an automated universal dataform ("AUD") to each CRA.

45. For clarification, an AUD, or other regular transmission, is sent when the data furnisher initiates reporting on a consumer's account (e.g., opening an account, updating the account each month, closing an account, etc.), whereas an ACDV is how a data furnisher receives

a dispute request from the CRAs and how it updates reporting back to the CRAs after its investigation of the matter.

**C.     Plaintiff's Credit Report Contains Inaccurate and Adverse Tradelines, which Plaintiff Disputed to no Avail**

46.     On October 24, 2022, Plaintiff ordered an Experian credit report, Equifax credit report, and a TransUnion credit report to ensure proper reporting by Plaintiff's creditors (the "October 24 Credit Reports").

47.     Plaintiff noticed adverse tradelines in his October 24 Credit Reports, reporting inaccurate, misleading, or incomplete information that did not comply with FCRA standards.

48.     Plaintiff then disputed the inaccurate tradelines regarding the Hyundai account via certified mail to Experian, Equifax, and TransUnion on or about April 6, 2023 (the "Dispute Letters").

49.     Plaintiff's Dispute Letters specifically put Experian, Equifax, and TransUnion each on notice that the Hyundai account is a joint account that is included in the joint account holder's Chapter 13 bankruptcy, that the Hyundai account is being paid through the joint account holder's Chapter 13 plan, and that the reporting should be updated.

50.     Plaintiff's Dispute Letters included a copy of the pre-bankruptcy filing payment history as well as the Chapter 13 Trustee's payment history to prove the joint account holder's bankruptcy and to prove the payment history was reporting inaccurately.

51.     Plaintiff's Dispute Letters also detailed what was perceived to be problematic about the account, addressing the tradelines individually.

52.     Plaintiff requested that any derogatory reporting be updated to ensure accuracy and completeness of the account as required by the FCRA.

53.     Plaintiff is informed and believes that Experian, Equifax, and TransUnion each received Plaintiff's Dispute Letters and, in response, each individually failed to send Plaintiff's disputes to Hyundai, as the data furnisher, via an ACDV through e-OSCAR.

54.     On May 23, 2023, Plaintiff ordered a second Experian credit report, Equifax credit report, and TransUnion credit report to determine if his account was updated.

   a.     **Inaccuracy – Experian**

55.     Despite actual knowledge, Experian continued to report the Hyundai account, beginning in 202007XXXX, with a payment status of "Open. $899 past due as of May 2023," with

an outstanding balance of "$19,499", a past due amount of "$899", a "60" days past due notation for the month for May 2023, and without notation that the account is subject to a chapter 13 bankruptcy. This account was updated on May 9, 2023.

56. Reporting a debt that is included in and subject to bankruptcy in this manner is patently incorrect. As this tradeline includes derogatory information, the fact that it is showing on Plaintiff's credit report is lowering his Credit Score, and it is misleading to an extent to adversely affect credit decisions.

57. While Experian should not be reporting this tradeline at all during the pendency of the bankruptcy, if it did choose to report, it should report that the account is subject to the bankruptcy, and should also reporting completely and accurately in regard to payment history and status of the account.

58. Experian is reporting the account as if it is past due, outstanding, and derogatory payment history. This makes it appear as if he is behind on the account. This reporting is patently incorrect and misleading.

59. Experian did not update the reporting to remove the account from his credit report entirely or to stop reporting derogatory information after the joint account holder's bankruptcy was filed on December 17, 2021.

60. Experian failed to provide notice to Hyundai that Plaintiff was disputing the inaccurate and misleading information, and thus it failed to conduct a reasonable investigation of the information as required by the FCRA.

61. The most basic investigation would include a simple review of documentation on the account (i.e., the fact Plaintiff provided payment history that he has paid the account on time as well as trustee documents showing this account is being paid through the joint account holder's bankruptcy plan) compared to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA.

62. Plaintiff alleges that Experian did not review if its reporting complied with the unambiguous language of the FCRA or regulatory guidelines on accurate reporting under the FCRA.

63. If Experian reviewed such standards, or bankruptcy records regarding Plaintiff's responsibility on the account, Experian would have seen that its reporting was not in compliance and was therefore patently inaccurate or incomplete.

64. By continuing to report the account as described in paragraph 55, it incorrectly appears to third parties viewing Plaintiff's credit report that Plaintiff's account is not subject to bankruptcy protection and is currently past due, which is inaccurate.

65. In addition, as this severely derogatory account is being used to calculate Plaintiff's Credit Score, the credit score alone being what most lenders and employers use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

66. The lack of investigation and reporting of inaccurate and incomplete information by Experian is unreasonable.

    b.    **Inaccuracy – Equifax**

67. Despite actual knowledge, Equifax continued to report the Hyundai account, beginning in 202007XXXX, with a payment status of "Not more than three payments past due," with an outstanding balance of "$19,499", and a past due amount of "$899", and without notation that the account is subject to a chapter 13 bankruptcy. This account was updated on May 9, 2023.

68. Reporting a debt that is included in and subject to bankruptcy in this manner is patently incorrect. As this tradeline includes derogatory information, the fact that it is showing on Plaintiff's credit report is lowering his Credit Score, and it is misleading to an extent to adversely affect credit decisions.

69. While Equifax should not be reporting this tradeline at all during the pendency of the bankruptcy, if it did choose to report, it should report that the account is subject to the bankruptcy, and should also reporting completely and accurately in regard to payment history and status of the account.

70. Equifax is reporting the account as if it is past due and outstanding. This makes it appear as if he is behind on the account. This reporting is patently incorrect and misleading.

71. Equifax did not update the reporting to remove the account from his credit report entirely or to stop reporting derogatory information after the joint account holder's bankruptcy was filed on December 17, 2021.

72. Equifax failed to provide notice to Hyundai that Plaintiff was disputing the inaccurate and misleading information, and thus it failed to conduct a reasonable investigation of the information as required by the FCRA.

73. The most basic investigation would include a simple review of documentation on the account (i.e., the fact Plaintiff provided payment history that he has paid the account on time

as well as trustee documents showing this account is being paid through the joint account holder's bankruptcy plan) compared to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA.

74. Plaintiff alleges that Equifax did not review if its reporting complied with the unambiguous language of the FCRA or regulatory guidelines on accurate reporting under the FCRA.

75. If Equifax reviewed such standards, or bankruptcy records regarding Plaintiff's responsibility on the account, Equifax would have seen that its reporting was not in compliance and was therefore patently inaccurate or incomplete.

76. By continuing to report the account as described in paragraph 67, it incorrectly appears to third parties viewing Plaintiff's credit report that Plaintiff's account is not subject to bankruptcy protection and is currently past due, which is inaccurate.

77. In addition, as this severely derogatory account is being used to calculate Plaintiff's Credit Score, the credit score alone being what most lenders and employers use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

78. The lack of investigation and reporting of inaccurate and incomplete information by Equifax is unreasonable.

    c.    **Inaccuracy – TransUnion**

79. Despite actual knowledge, TransUnion continued to report the Hyundai account, beginning in 202007XXXX, with a payment status of "60 days past due," with an outstanding balance of "$19,499", and a past due amount of "$899", and without notation that the account is subject to a chapter 13 bankruptcy. This account was updated on May 9, 2023.

80. Reporting a debt that is included in and subject to bankruptcy in this manner is patently incorrect. As this tradeline includes derogatory information, the fact that it is showing on Plaintiff's credit report is lowering his Credit Score, and it is misleading to an extent to adversely affect credit decisions.

81. While TransUnion should not be reporting this tradeline at all during the pendency of the bankruptcy, if it did choose to report, it should report that the account is subject to the bankruptcy, and should also reporting completely and accurately in regard to payment history and status of the account.

82. TransUnion is reporting the account as if it is past due and outstanding. This makes it appear as if he is behind on the account. This reporting is patently incorrect and misleading.

83. TransUnion did not update the reporting to remove the account from his credit report entirely or to stop reporting derogatory information after the joint account holder's bankruptcy was filed on December 17, 2021.

84. TransUnion failed to provide notice to Hyundai that Plaintiff was disputing the inaccurate and misleading information, and thus it failed to conduct a reasonable investigation of the information as required by the FCRA.

85. The most basic investigation would include a simple review of documentation on the account (i.e., the fact Plaintiff provided payment history that he has paid the account on time as well as trustee documents showing this account is being paid through the joint account holder's bankruptcy plan) compared to its reporting in order to determine if it complies with the maximum possible accuracy and completeness standard of the FCRA.

86. Plaintiff alleges that TransUnion did not review if its reporting complied with the unambiguous language of the FCRA or regulatory guidelines on accurate reporting under the FCRA.

87. If TransUnion reviewed such standards, or bankruptcy records regarding Plaintiff's responsibility on the account, TransUnion would have seen that its reporting was not in compliance and was therefore patently inaccurate or incomplete.

88. By continuing to report the account as described in paragraph 79, it incorrectly appears to third parties viewing Plaintiff's credit report that Plaintiff's account is not subject to bankruptcy protection and is currently past due, which is inaccurate.

89. In addition, as this severely derogatory account is being used to calculate Plaintiff's Credit Score, the credit score alone being what most lenders and employers use to determine Plaintiff's creditworthiness, it is misleading in such a way as to adversely affect credit decisions.

90. The lack of investigation and reporting of inaccurate and incomplete information by TransUnion is unreasonable.

**D.    Damages**

91. Plaintiff pulled the credit reports at issue at a cost for access to the reports, after the dispute process, specifically for the sole purpose of verifying that the inaccuracies were fixed.

92. As a result of the incorrect reporting, Plaintiff has incurred out-of-pocket expenses, and has also suffered emotional harm, physical sickness, and excessive stress resulting in doubt as to the effectiveness of the Fair Credit Reporting Act, and the power of this Court to preserve and perpetuate a fresh start as intended by Congress.

93. Plaintiff has been denied credit and is unable to rebuild his credit based on the inaccurate reporting by Experian. Plaintiff's diminished creditworthiness, resulting from Experian's inaccurate reporting, has caused him to abandon his intentions to apply for certain credit.

94. Experian's actions, as alleged herein, are each in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

95. Plaintiff has been denied credit and is unable to rebuild his credit based on the inaccurate reporting by Equifax. Plaintiff's diminished creditworthiness, resulting from Equifax's inaccurate reporting, has caused him to abandon his intentions to apply for certain credit.

96. Equifax's actions, as alleged herein, are each in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

97. Plaintiff has been denied credit and is unable to rebuild his credit based on the inaccurate reporting by TransUnion. Plaintiff's diminished creditworthiness, resulting from TransUnion's inaccurate reporting, has caused him to abandon his intentions to apply for certain credit.

98. TransUnion's actions, as alleged herein, are each in direct violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

## FIRST CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))

### (Against Defendants and Does 1-100)

99. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A. Experian, Equifax, and TransUnion (collectively referred to as "the CRA Defendants") Each Failed to Assure Credit Reporting Accuracy**

100. Experian violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and the credit files it published and maintained concerning Plaintiff.

101. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and the credit files it published and maintained concerning Plaintiff.

102. TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and the credit files it published and maintained concerning Plaintiff.

103. Had Experian maintained reasonable procedures to assure maximum accuracy, it would have never reported the Hyundai account as described herein.

104. Experian knew, or should have known, that (1) a co-debtor is protected from past due or ongoing reporting, (2) the tradeline should have been suppressed or ceased reporting as of the bankruptcy filing, (3) if the tradeline were to report it should report the fact it is subject to a bankruptcy, and (4) if the tradeline were to report it should report accurately as to status and payment history. Further, Experian knew, or should have known, that continuing to report the account does not reflect maximum possible accuracy and completeness as required by the FCRA.

105. Had Equifax maintained reasonable procedures to assure maximum accuracy, it would have never reported the Hyundai account as described herein.

106. Equifax knew, or should have known, that (1) a co-debtor is protected from past due or ongoing reporting, (2) the tradeline should have been suppressed or ceased reporting as of the bankruptcy filing, (3) if the tradeline were to report it should report the fact it is subject to a bankruptcy, and (4) if the tradeline were to report it should report accurately as to status and payment history. Further, Equifax knew, or should have known, that continuing to report the account does not reflect maximum possible accuracy and completeness as required by the FCRA.

107. Had TransUnion maintained reasonable procedures to assure maximum accuracy, it would have never reported the Hyundai account as described herein.

108. TransUnion knew, or should have known, that (1) a co-debtor is protected from past due or ongoing reporting, (2) the tradeline should have been suppressed or ceased reporting as of the bankruptcy filing, (3) if the tradeline were to report it should report the fact it is subject to a bankruptcy, and (4) if the tradeline were to report it should report accurately as to status and payment history. Further, TransUnion knew, or should have known, that continuing to report the account does not reflect maximum possible accuracy and completeness as required by the FCRA.

109. Congress specifically recognized the "elaborate mechanism developed for investigating and evaluating credit worthiness, credit standing, credit capacity, character, and general reputation of consumers." *Nayab v. Capital One Bank (USA), NA*, 942 F. 3d 480, 492 (9th Cir. 2019). The investigation and evaluation of Plaintiff's creditworthiness, credit standing, credit capacity, character and general reputation as a consumer are all damaged by the inaccurate reporting the CRA Defendants each allowed.

110. As a result of Experian's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

111. As a result of Equifax's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

112. As a result of TransUnion's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

**B.   Willful Violations**

113. The CRA Defendant independent violations, as described herein, were willful; specifically, the CRA Defendants have intentionally and purposefully set up a system where inaccuracies are not only probable, but inevitable.

114. The CRA Defendants regularly, as a policy, ignore disputes by consumers and fail to perform even a basic investigation regarding the disputes. Additionally, the CRA Defendants regularly fail to forward disputes to data furnishers, thereby frustrating the entire dispute process.

115. To the extent the CRA Defendants do send consumer disputes, they send these disputes to employees who do not live within the continental United States to hide or subvert a consumer's liability to confront the individual(s) directly responsible for approving accurate reporting.

116. The CRA Defendant's respective employees receive little to no training concerning how to accurately report consumer debt.

117. Instead, the CRA Defendant's respective employees are instructed to parrot whatever information a data furnisher provides regardless of whether the information is accurate.

118. The CRA Defendant's respective employees are regularly expected to review and approve over ninety (90) disputes per day, rendering less than five (5) minutes to review, investigate, and respond to each dispute received.

119. The CRA Defendants have intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

120. As a result of the CRA Defendant's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, dissemination of inaccurate information, diminished credit, and other mental and emotional distress.

121. Experian's violations were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

122. In the alternative, Experian was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

123. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Experian in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n and § 1681o.

124. Equifax's violations were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

125. In the alternative, Equifax was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

126. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from Equifax in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n and § 1681o.

127. TransUnion's violations were willful, rendering it individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

128. In the alternative, TransUnion was negligent, which entitles Plaintiff to recover under 15 U.S.C. § 1681o.

129. Plaintiff is entitled to recover actual damages, statutory damages, costs, and attorneys' fees from TransUnion in an amount to be determined by this Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**SECOND CAUSE OF ACTION**

**(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(1))**

**(Against Defendants and Does 1-100)**

130. Plaintiff re-alleges and incorporates the allegations in each and every paragraph above by reference as if fully stated herein.

**A.    The CRA Defendants Each Failed to Reinvestigate the Disputed Information in violation of 15 U.S.C. § 1681i(a)(1)**

131. Pursuant to 15 U.S.C. § 1681i(a)(1), Experian was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's dispute regarding the Hyundai account.

132. Pursuant to 15 U.S.C. § 1681i(a)(1), Equifax was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's dispute regarding the Hyundai account.

133. Pursuant to 15 U.S.C. § 1681i(a)(1), TransUnion was required to conduct a reasonable investigation and to delete any information that was not accurate after receiving notice of Plaintiff's dispute regarding the Hyundai account.

134. Thus, the CRA Defendants each failed to conduct a reasonable investigation and correct the misleading and/or inaccurate statements on the account within the statutory time frame.

135. The CRA Defendants are not passive entities bound to report whatever information a data furnisher provides.

136. Plaintiff alleges the CRA Defendants are readily familiar with FCRA requirements and credit reporting industry standards.

137. Based on the foregoing, Plaintiff alleges that the CRA Defendants can, and do, suppress inaccurate information from being reported when data furnishers provide inaccurate information.

138. The CRA Defendants can and do instruct data furnishers on how to properly report certain accounts from time to time upon request from a data furnisher.

139. The CRA Defendants each failed to conduct a reasonable investigation because any basic investigation would have uncovered that they each independently were not reporting the Hyundai account at issue correctly.

140. Had Experian conducted a proper investigation, it could have entirely removed the Hyundai tradeline from his credit report or it could have ceased the reporting as of December 17, 2021. In the alternative, Experian could have noted the account was subject to bankruptcy and corrected the inaccurate status and payment history. However, Experian continued to report the account as described herein.

141. Had Equifax conducted a proper investigation, it could have entirely removed the Hyundai tradeline from his credit report or it could have ceased the reporting as of December 17, 2021. In the alternative, Equifax could have noted the account was subject to bankruptcy and corrected the inaccurate status and payment history. However, Equifax continued to report the account as described herein.

142. Had TransUnion conducted a proper investigation, it could have entirely removed the Hyundai tradeline from his credit report or it could have ceased the reporting as of December 17, 2021. In the alternative, TransUnion could have noted the account was subject to bankruptcy and corrected the inaccurate status and payment history. However, TransUnion continued to report the account as described herein.

143. The CRA Defendants each, therefore, did not conduct even the most basic investigation regarding credit reporting industry standards, otherwise the aforementioned would have been uncovered.

144. Plaintiff alleges that Experian did not send an ACDV to Hyundai to confirm accurate reporting on its account. Despite receiving the Dispute Letters providing notice of the inaccuracies, Experian did not delete or correct the tradeline or conduct an investigation.

145. Plaintiff alleges that Equifax did not send an ACDV to Hyundai to confirm accurate reporting on its account. Despite receiving the Dispute Letters providing notice of the inaccuracies, Equifax did not delete or correct the tradeline or conduct an investigation.

146. Plaintiff alleges that TransUnion did not send an ACDV to Hyundai to confirm accurate reporting on its account. Despite receiving the Dispute Letters providing notice of the inaccuracies, TransUnion did not delete or correct the tradeline or conduct an investigation.

147. In the alternative, if the CRA Defendants deemed Plaintiff's Dispute Letters "frivolous or irrelevant" under 15 U.S.C. § 1681i(a)(3), the CRA Defendants failed to notify Plaintiff of such determination as required by 15 U.S.C. § 1681i(a)(3)(B). As Plaintiff received no such notice from the CRA Defendants, Plaintiff alleges the CRA Defendants deemed his Dispute Letters valid, and thus triggered its obligations under 15 U.S.C. § 1681i(a)(1) and (2)(A), for which they did not comply.

### THIRD CAUSE OF ACTION
### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
### (Against Defendants and Does 1-100)

148. Plaintiffs re-allege and incorporate the allegations in each and every paragraph above by reference as if fully stated herein.

**A.  The CRA Defendants Each Failed to Review and Consider all Relevant Information**

149. The CRA Defendants independently violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by the Plaintiffs.

150. The CRA Defendants' independent violations of 15 U.S.C. § 1681i(a)(4) have caused the Plaintiffs to suffer actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.  Willful Violations**

151. The CRA Defendants' independent violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

152. In the alternative, the CRA Defendants were each negligent in failing to review and consider all relevant information the Plaintiffs submitted, which entitles each Plaintiff to recovery under 15 U.S.C. § 1681o.

153. Plaintiffs are each entitled to recover actual damages, statutory damages, costs and attorneys' fees from each of the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION

### (Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))

### (Against Defendants and Does 1-100)

154. Plaintiffs re-allege and incorporate the allegations in each and every paragraph above by reference as if fully stated herein.

**A.   The CRA Defendants Each Failed to Delete Disputed and Inaccurate Information**

155. The CRA Defendants independently violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from the Plaintiffs' credit file or modify the item of information upon a lawful reinvestigation.

156. The CRA Defendants' independent violations of 15 U.S.C. § 1681i(a)(5)(A) have resulted in each Plaintiff suffering actual damages, including, but not limited to: damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**B.   Willful Violations**

157. The CRA Defendants' independent violations were willful, rendering each individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

158. In the alternative, the CRA Defendants were each negligent, which entitles each Plaintiff to recovery under 15 U.S.C. § 1681o.

159. Plaintiffs are each entitled to recover actual damages, statutory damages, costs and attorneys' fees from each of the CRA Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### PRAYER FOR RELIEF

160. WHEREFORE, Plaintiff prays for judgment as follows:

   a. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;
   b. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n;
   c. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;
   d. Award attorneys' fees and costs of suit incurred herein pursuant to 15 U.S.C. §§ 1681n and 1681o;

    e. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, *et seq*.; and

    f. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

Respectfully submitted,

**SCHUMACHER LANE PLLC**

Dated: August 15, 2023

*/s/ Kyle Schumacher*
Kyle Schumacher
kyle@schumacherlane.com
P.O. Box 558
Spring Branch, TX 78070
503-482-8137 ph
210-783-1383 fax
Attorneys for Plaintiff

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial of this matter by jury.

                                      **SCHUMACHER LANE PLLC**

Dated: August 15, 2023                        */s/ Kyle Schumacher*
                                                    Kyle Schumacher
                                                      Attorneys for Plaintiff